\*\* NOT FOR PUBLICATION \*\*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JOAN HELEINE, and ROBIN and MICHAEL NEGLIA, on behalf of themselves and the putative class, | : : : : : | |
| Plaintiffs, | : : : | Civil Action No. 11-5695 (FLW)(DEA) |
| v. | : : : | **OPINION** |
| SAXON MORTGAGE SERVICES, INC | : : : : | |
| Defendant. | : : : | |

**WOLFSON, United States District Judge:**

Plaintiffs Robin and Michael Neglia ("Plaintiffs" or the "Neglias") own a vacation rental home located at 1608 Maryland Avenue, Cape May, New Jersey, 08204 (the "Property"), and Defendant Saxon Mortgage Services, Inc. ("Defendant" or "Saxon") services the mortgage for the property. After Plaintiffs defaulted on their mortgage, the parties entered into several modifications of their mortgage obligations. Plaintiffs were unable to meet the obligations of their payment plans, and Defendant foreclosed on the Property. In this putative class action suit against Defendant, Plaintiffs allege that Defendant violated the New Jersey Consumer Fraud Act, breached its contractual obligations, and made fraudulent misrepresentations during the loan modification process. Defendant now moves to dismiss for, inter alia, lack of subject matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §

1

1332(d)(2). For the foregoing reasons, the Court grants Defendant's motion and dismisses the Complaint without prejudice.

## I. BACKGROUND

The following facts are set forth in Plaintiffs' pleadings. Initially in this matter, Plaintiffs and one Joan Heleine filed a complaint against Saxon "based on the uniform [Home Affordable Modification Program ("HAMP")] rules contained in the Supplemental Directives, Servicer Handbook and other program documentation which governs the entirety of the Making Home Affordable Program and all aspects of loan modification under HAMP." Compl. at ¶ 98. Heleine has since settled her claims, which included all HAMP-related claims in this action asserted against Saxon, leaving only the Neglias as Plaintiffs.

The Neglias then filed a First Amended Complaint ("FAC"), alleging the following. On May 30, 2006, the Neglias refinanced a $1,000,000 mortgage loan on the Property, with that loan serviced by Saxon. FAC at ¶ 25. In February 2009, the Neglias sought a loan modification from Saxon due to financial hardship. Id. at ¶ 26. Following this modification request, the Neglias allege that Saxon required them to submit various documents relating to their loan and finances, and advised them to continue to withhold monthly mortgage payments so as to remain delinquent on their loan obligation, in order to better modify their loan under the HAMP guidelines. Id. at ¶¶ 27-28. The Neglias allege, however, that beyond that instruction, Saxon was less than cooperative in processing their documents and in communicating with them. Id. at ¶¶ 30-34.

On May 13, 2009, without having obtained any modification, the Neglias were served with a foreclosure notice on the Property. Id. at ¶ 36. The Neglias allege that they

contacted Saxon about the foreclosure but were told "not to worry." Id. at ¶ 38. The Neglias also inquired about possible repayment plans; however none of the plans presented met their expectations. Id. at ¶ 39.

On November 18, 2009, Saxon presented the Neglias with a "Formal Repayment Plan," or "Trial Plan," which required them to pay a $20,000 servicing fee by November 25, 2010, with this fee not to be applied to principal or interest. Id. at ¶¶ 48-49. The Trial Plan also required the Neglias to pay a total of $170,184.97 in other fees.[1] Id. at ¶ 50. Ultimately, the Trial Plan required the Neglias to make three trial payments of $6,868.40 per month for the months of December 2009, and January and February 2010, and provided that if they timely made these payments, Saxon would consider the modification that the Neglias had originally sought in connection with their financial hardship request. Id. at ¶¶ 51-52.[2] The Neglias subsequently agreed to the Trial Plan,

---

[1] The fees allegedly included "late fees, unpaid installments, legal fees, valuation fees, inspection fees, and delinquent tax fees." FAC at ¶ 50.

[2] Specifically, the language of the Trial Plan provided for the modification agreement as follows:
> I understand that once Lender [Saxon] is able to determine the final amounts of unpaid interest and any other delinquent amounts to be added to my loan balance and after deducting from my loan balance any remaining money held at the end of the Trial Period above, the Lender will determine a new payment amount. If I comply with the requirements of this Agreement, including making all Trial Period payments on or before the above identified due dates, the Lender will send me a Modification Agreement for my signature which will modify my Loan Documents as necessary to reflect a new payment amount based on an annual interest of 5%, amortizing over the remaining Note term (unless otherwise agreed by Borrower and Lender) and waive any unpaid late charges that accrued during the Trial Period. The Modification Agreement will provide that, as of the Modification Effective Date, a buyer or transferee of the Property will not be permitted, under any circumstance, to assume the loan unless permitted by applicable State or Federal law, rules or regulations. This Agreement shall terminate the day before the Modification Effective Date and the Loan Documents, as modified by a fully executed Modification

3

allegedly with the understanding that by fulfilling its terms, Saxon would permanently modify their loan. Id. at ¶¶ 54-55.

On December 9, 2009, prior to making their first payment, the Neglias executed a replacement agreement modifying the Trial Plan – lowering the amount of the servicing fee to $19,732.16 and the amount of the other fees to $167,956.16, while still providing for the Neglias to make three trial payments of $6,868.40 per month, which would now begin in January 2010. Id. at ¶¶ 56-58. The other terms in this replacement agreement remained the same as the Trial Plan. Id. at ¶ 59. The Neglias allege that thereafter they "made all three monthly payments . . . and performed all other conditions required or requested of them during the three month trial period." Id. at ¶ 60. The Neglias further allege that, after having timely made these payments, they should have been offered a permanent loan modification at an interest rate of 5% on April 1, 2010. Id. at ¶ 60; see also Footnote 2 of this Opinion. Instead, the Neglias allege, they were offered the "Modification Agreement" on May 10, 2010, which identified $189,301.01 in "accrued but unpaid interest" to be added to the unpaid principal balance of the loan, a 5.25% interest rate instead of the 5% rate set forth in the Trial Plan, and monthly payments at $6,984.40. FAC at ¶ 61.

---

> Agreement, shall govern the terms between the Lender and me for the remaining term of the loan. Provided I make timely payments during the Trial Period and both the Lender and I execute the Modification Agreement, I understand that my first modified payment will be due on the Modification Effective Date (i.e. on the first day of the month following the month in which the last Trial Period Payment is due).

Id. at ¶ 53.

4

On November 29, 2010, the Neglias executed a "Final Modification Agreement" for the Property, which provided for a monthly payment of $6,753.83.[3] Id. at ¶ 64). This Final Modification Agreement provided for an unpaid principal balance of $1,179,810.72. Id. at ¶ 62. Nevertheless, on April 27, 2011, the Neglias again received a foreclosure notice, advising that they were in default on their loan in the amount of $15,321.61. Id. at ¶ 66. The Neglias do not allege that they made any payments to Saxon between May 2010 and April 2011.[4]

The Neglias then filed this action against Saxon, alleging a violation of New Jersey's Consumer Fraud Act, as well as breach of contract and fraudulent misrepresentation claims, and seeking class certification under Fed. R. Civ. P. 23. The core of the Neglias' FAC is the allegation that, as a result of Saxon's allegedly improper conduct, they incurred $179,810.72 in fees in connection with their loan modification efforts.[5] Saxon moves to dismiss the FAC for lack of proper subject matter jurisdiction under CAFA, among other grounds. For the reasons that follow, the Court will grant Saxon's motion.

**II. STANDARD OF REVIEW**

A party may move for dismissal pursuant to Rule 12(b)(1) based on lack of subject matter jurisdiction. Dasrath v. Cont'l Airlines, Inc., 228 F. Supp. 2d 531, 543-44

---

[3] Plaintiffs do not allege or otherwise explain what occurred between May and November 2010.
[4] Again, Plaintiffs do not allege or otherwise explain what occurred between November 2010 and April 2011.
[5] Plaintiffs further allege that they were "wrongly deprived of the opportunity to avoid default and/or foreclosure," "wrongly deprived of the opportunity to obtain a favorable loan modification," and that Defendant "had internal policies and practices . . . intended to and did falsely delay trial and final modifications in a manner similar to those used to delay [Plaintiff's] modification." Id. at ¶¶ 65-69.

(D.N.J. 2002). "When subject matter jurisdiction is challenged under rule 12(b)(1), the plaintiff must bear the burden of persuasion." Symczyk v. Genesis HealthCare Corp., 656 F.3d 189, 191 n.4 (3d Cir. 2011).

A court, when faced with a Rule 12(b)(1) motion, must "start by determining whether [it is] dealing with a facial or factual attack to jurisdiction. If [it] is a facial attack, the court looks only at the allegations in the pleadings and does so in the light most favorable to the plaintiff." Id. "If [it] is a factual attack, however, it is permissible for a court to review evidence outside the pleadings." Id. Moreover, the trial court is free to weigh and evaluate the evidence in determining whether its jurisdiction has been demonstrated. Symczyk, 656 F.3d at 191 n.4 (citing Mortensen v. First Federal Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)). A jurisdictional challenge is a factual challenge if "it concerns not an alleged pleading deficiency, but rather the actual failure of [plaintiff's] claims to comport with the jurisdictional prerequisites." U.S. ex rel. Atkinson v. PA. Shipbuilding Co., 473 F.3d 506, 514 (3d Cir. 2007). In the present case, Defendant challenges whether the quantum of damages Plaintiffs allege is sufficient to meet the jurisdictional threshold set by CAFA. Defendant is therefore not alleging a "pleading deficiency," but rather whether Plaintiffs claims "comport with the jurisdiction prerequisites" of CAFA. See id. Accordingly, I consider Defendant's motion to be a factual attack to jurisdiction.

"A Federal court has broad power to decide whether it has jurisdiction to hear a case and may make factual findings which are decisive to the issue of jurisdiction." Martinez v. U.S. Post Office, 875 F. Supp. 1067, 1071 (D.N.J. 1995) (citing, inter alia, Mortensen, 549 F.2d at 891). Nevertheless, when a party brings a factual challenge to

6

subject matter jurisdiction, the court may consider exhibits outside the pleadings. Mortensen, 549 F.2d at 891. Indeed, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Id. Significantly, no presumption of truthfulness attaches to the allegations of the complaint insofar as they concern subject matter jurisdiction. Id. A motion to dismiss for lack of subject matter jurisdiction predicated on the legal insufficiency of a claim may be granted if the claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial and frivolous." Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1408-1409 (3d Cir.), cert. denied, 501 U.S. 1222 (1991) (quoting Bell v. Hood, 327 U.S. 678, 683 (1946)).

Thus, under Rule 12(b)(1), I am "permitted to make factual findings, beyond the pleadings, that [a]re decisive to determining jurisdiction." CNA v. United States, 535 F.3d 132, 145 (3d Cir. 2008) (citing Atkinson, 473 F.3d at 514). In applying Rule 12(b)(1), I am mindful of the Third Circuit's admonition not to rule on the merits of Plaintiffs' case under this procedural vehicle in light of the fewer procedural protections accorded to a plaintiff under the 12(b)(1) standard. See CNA, 535 F.3d at 144-45 ("By requiring less of a factual showing than would be required to succeed at trial, district courts ensure that they do not prematurely grant Rule 12(b)(1) motions to dismiss claims in which jurisdiction is intertwined with the merits and could be established, along with the merits, given the benefit of discovery.").

### III. DISCUSSION.

In this matter, Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) presents a factual attack to Plaintiffs' claim that they satisfy the jurisdictional

requirements of CAFA – specifically, the amount in controversy and numerosity requirements.[6]  See Def.'s Mot. To Dismiss, 11-13; FAC at ¶ 8.  CAFA provides in relevant part that:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which—(A) any member of a class of plaintiffs is a citizen of a State different from any defendant; (B) any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or (C) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state.

28 U.S.C. § 1332(d)(2).  Section 1332(d)(5)(B) limits the application of CAFA to proposed classes with members numbering 100 or more.  28 U.S.C. § 1332(d)(5)(B) (providing that paragraph (d)(2) shall not apply if "the number of members of all proposed plaintiff classes in the aggregate is less than 100").  Under § 1332(d)(6), "[i]n any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs."  See Kaufman v. Allstate New Jersey Ins. Co., 561 F.3d 144, 151 (3d Cir. 2009).  When CAFA jurisdiction is challenged, as it is in the instant matter, the party asserting proper jurisdiction – here, Plaintiffs – bears the burden of satisfying CAFA's requirements by a preponderance of the evidence.  Frederico v. Home Depot, 507 F.3d 188, 194 (3d Cir. 2007).

In its motion, Defendant challenges jurisdiction by arguing that Plaintiffs cannot demonstrate that the amount in controversy in their proposed class action exceeds the

---

[6]  Plaintiffs only pleaded a basis for federal jurisdiction under CAFA; Plaintiffs do not invoke this Court's diversity jurisdiction.  In any event, Plaintiffs have not pleaded any facts that would allow the Court to conclude on the basis of the FAC that diversity jurisdiction exists under 28 U.S.C. § 1332.

8

$5,000,000 threshold under CAFA. In that connection, the Court notes that Plaintiffs contend that CAFA jurisdiction exists solely "[b]ased on the size of the modifications at issue," and thus "Plaintiffs believe that the amount in controversy exceeds $5 million." FAC at ¶ 72. For the reasons that follow, the Court finds that Plaintiffs have failed to establish subject matter jurisdiction under CAFA.

To determine whether I have CAFA jurisdiction over Plaintiffs' claims in light of Defendant's challenge to the amount in controversy, I apply the test set forth in Samuel-Bassett v. KIA Motors Am., Inc., 357 F.3d 392, 397 (3d Cir. 2004). Frederico v. Home Depot, 507 F.3d 188, 197 (3d Cir. 2007) (directing courts to apply Samuel-Bassett in cases where plaintiff has not specifically averred in the complaint that the amount in controversy is less than the jurisdictional minimum). Samuel-Bassett "articulated a template for addressing subject matter jurisdiction challenges" by instructing courts to follow one of two Supreme Court cases: St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283 (1938), and McNutt v. General Motors Acceptance Corp. of Indiana, 298 U.S. 178 (1936). Frederico v. Home Depot, 507 F.3d at 193-94. Where, as here, factual disputes as to the amount in controversy are involved, the McNutt preponderance of the evidence standard is to be utilized.[7] Id..

---

[7]   In Samuel-Bassett, the Third Circuit distinguished Red Cab and McNutt. In matters where the relevant facts are not in dispute or findings have been made, district courts should adhere to the "legal certainty" test outlined in Red Cab. Frederico, 507 F.3d at 194 (citing Samuel-Bassett, 357 F.3d at 398). The Red Cab "legal certainty test" requires that the amount of damages asserted by the party claiming jurisdiction controls so long as it is made in good faith, and will be only be dismissed if the party challenging jurisdiction can show "from the face of the pleadings, it is apparent, to a legal certainty, that the [opposing party] cannot recover the amount claimed, or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount." Red Cab Co., 303 U.S. at 289.

Under the McNutt framework, a district court, in determining the amount in controversy, "may . . . insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence." 298 U.S. at 189. Thus, in the instant matter, because the facts surrounding the amount in controversy are in dispute, Plaintiffs must justify their allegations as to the amount in controversy by a preponderance of evidence. McNutt, 298 U.S. at 189; Samuel-Bassett, 357 F.3d at 397; accord Anthony C. Mengine Law, Inc. v. Healthport, 695 F. Supp. 2d 225, 231-32 (W.D. Pa. 2010) (holding that where plaintiffs contest federal subject matter jurisdiction, and it is not clear from the face of the pleadings that the amount in controversy could never reach the jurisdictional threshold, the issue is governed by McNutt). In other words, Plaintiffs must show, based on the allegations in the FAC, that it is more likely than not that the aggregate of their proposed claims will meet or exceed $5,000,000. 28 U.S.C. § 1332(d)(2) & (d)(6); McNutt, 298 U.S. at 189; Standard Fire Ins. Co. v. Knowles, __ S. Ct. ___ , ___ ., 2013 WL 1104735, at *3 (2013) ("[T]he [CAFA] statute tells the District Court to determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the definition of [the plaintiff's] proposed class and determine whether the resulting sum exceeds $5 million.").

I begin with Plaintiffs' claim of damages. Plaintiffs argue that as a result of Saxon's "unfair and deceptive refusal to fulfill its obligations" to provide for a more favorable loan modification, Plaintiffs were forced to incur $179,810.72 of "improper fees." FAC at ¶¶ 65, 107. Plaintiffs then allege that "[b]ased on the size of the modifications at issue, Plaintiffs believe that the amount in controversy exceeds $5

10

million." Id. at ¶ 72  In opposing jurisdiction, Defendant challenges the method Plaintiffs use to calculate their damages – namely, that many of the alleged damages are the result of legitimate agreements willingly entered into by Plaintiffs – and argue further that Plaintiffs would have to allege a much larger class in order to reach the requisite $5 million threshold.  In that regard, Defendant also challenges the basis for Plaintiffs' alleged damages, contending instead they appear to be legitimate fees that Plaintiffs agreed to pay when they executed the various loan modification agreements.[8]  Defendant argues that the only potential for damages stems from the 0.25% difference in interest rates between the one set forth in the Trial Plan and the one actually offered in May 2010.  Def.'s Mot. to Dismiss, 12; FAC at ¶¶ 103-107.  According to Defendant's calculations, these damages would not exceed $1,250, based on the 0.25% rate difference applied to their one million dollar loan over a six-month period from May to October 2010.  Def. Mot. to Dismiss, 12 & n.8.  After reviewing Defendant's arguments and the FAC, I determine that Defendants have raised a proper challenge to Plaintiff's assertion of jurisdiction under CAFA.

Plaintiffs contend that they incurred $179,810.71 in fees, but it is unclear how they calculated this amount.  In one portion of the FAC, Plaintiffs claim they suffered $167,956.16 in additional fees as a result of Saxon's allegedly improper conduct, and that they were required to pay a $19,732.16 servicing fee.  Id. at ¶¶ 56-57.[9]  Plaintiffs also

---

[8]    Defendant points out that Plaintiffs do not allege that these damages stem from their entitlement to a more favorable modification than the Final Modification Agreement, such as one under HAMP, or even that they were entitled any modification once they were in default.

[9]    As previously stated, the "Trial Plan" initially required a "$20,000 'servicing fee'" and "payment in full of a total of $170,184.97" of other fees, to which Plaintiffs apparently agreed. (FAC at ¶ 49-50, 55).

11

allege that they made three monthly trial payments of $6,868.40 each, and that the Loan Modification Agreement identified "$189,301.01 in accrued but unpaid interest to the unpaid principal balance of the loan." Id. at ¶¶ 58, 61.  Lastly, Plaintiffs have alleged that the Final Modification Agreement "provided for an unpaid principal balance of $1,179,810.72" and a monthly payment of $6,753.83.  Id. at ¶¶ 62-64.  The Court is unable to determine from these various figures how Plaintiffs arrived at the amount of $179,810.71 in damages as a result of "improper fees."  No readily apparent combination of these specific fees comes to the total amount claimed by Plaintiffs.  But see Def. Reply, 5 & n.6 (suggesting that Plaintiffs' alleged damages based on fees might instead be the amount Plaintiffs owed Defendants as of May 2010 as delinquent payments).

Moreover, Plaintiffs do not respond to Defendants jurisdictional challenge with any declarations, affidavits, or other evidence to support their position.  USX Corp. v. Adriatic Ins. Co., 345 F.3d 190, 205 n.12 (3d Cir. 2003) (adopting rule, in context of removal, permitting "court to consider jurisdictional facts contained in later-filed affidavits as amendments to the removal petition where . . . those facts merely clarify (or correct technical deficiencies in) the allegations already contained in the original notice").  Indeed, Plaintiffs' sole argument is that they "seek substantially more than Saxon here argues, and Saxon has proffered no evidence to the contrary."  Pl. Opp., 9.  This thin argument – based on an incorrect understanding of each party's burden – is insufficient to support Plaintiffs' claim that they satisfy CAFA's threshold amount in controversy requirement; nor can Plaintiffs fall back on their conclusory assertion in the FAC that they "believe" the amount in controversy exceeds $5,000,000 in light of Defendant's challenge to that amount.  See McNutt, 298 U.S. at 189 (holding that party asserting

12

jurisdiction "must carry throughout the litigation the burden of showing that he is properly in court"); id. ("If [plaintiff's] allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof."); see also USX Corp, supra. Accordingly, I find that Plaintiffs have not demonstrated that it is more likely than not that they satisfy CAFA's amount in controversy requirement, and therefore conclude that the Court does not have jurisdiction over Plaintiffs' FAC. Frederico, 507 F.3d at 197.

Although this determination ends my subject matter jurisdiction analysis, I also note my concern as to whether Plaintiffs have met CAFA's numerosity requirement. See 28 U.S.C. § 1332(d)(5)(B). Again, because Plaintiffs bear the burden of showing that federal jurisdiction is proper, they must show, by a preponderance, that their class size is greater than 100 members. Frederico, 507 F.3d at 193 (citing Samuel-Bassett, 357 F.3d at 396; Morgan, 471 F.3d at 473); see also, Lewis v. Ford Motor Co., 610 F. Supp. 2d 476, 480 (W.D. Pa. 2009) (noting that the party seeking federal jurisdiction bears "the burden of establishing that . . . [the] criteria of CAFA are met . . . [including] a class size of at least 100 members"); Faltaous v. Johnson & Johnson, No. 07-1572, 2007 WL 3256833, at *8 (D.N.J. Nov. 5, 2007) (preponderance standard applies to numerosity requirement (citing McNutt, 298 U.S. at 189)).

In that connection, Plaintiffs concede that their proffered class is significantly smaller than what was initially proposed in the original complaint.[10] Indeed, the class

---

[10] Plaintiffs concede that in their original complaint their claims under the HAMP program "in large part, formed the basis" for the original allegations that "inarguably satisfied the $5,000,000 requirement of CAFA." Pl. Opp., 9. In contrast, the FAC only includes claims "based entirely on Saxon's fraudulent conduct in connection with Saxon's servicing and modification of Neglia's loan mortgage." Id. While Plaintiffs

13

proposed in the FAC is based upon claims that are seemingly specific to the Neglias. Plaintiffs allege that the entirety of their class consists of:

> (1) All New Jersey resident mortgage customers of Saxon who obtained a trial loan modification agreement and made the trial payments required thereunder but did not receive a permanent modification on the Modification Effective date and in accordance with the terms of the trial plan agreement.
>
> (2) All New Jersey mortgage customers of Saxon who were improperly placed in foreclosure and/or charged for various foreclosure-related fees.
>
> Excluded from this Class are governmental entities, Saxon, its affiliates and subsidiaries, Saxon's current employees and current or former officers, directors, agents, and representatives, and their family members.

FAC. at ¶ 70. Plaintiffs further claim that "the Class encompasses many hundreds and perhaps thousands of individuals whose identities can be readily ascertained from Saxon's books and records." Id. at ¶ 71. Although Plaintiffs' claims may initially appear broad, closer review of their arguments reveals that these claims are essentially limited to the specific modification process entered into by Plaintiffs. Again, these do not include claims that Plaintiffs, and thus the class members, were eligible under HAMP. Rather, Plaintiffs' class is comprised of members who allegedly were (1) misled by Saxon into agreeing to loan modifications based on a misrepresentation of their HAMP eligibility, but who were never actually eligible under HAMP, and (2) incurred "improper fees" as a

---

continue to assert claims of being "deprived of the opportunity to avoid default and/or foreclosure . . . [and] wrongly deprived of the opportunity to obtain a favorable loan modification," these allegations were related to HAMP claims in the original complaint and are duplicated here despite the fact that Plaintiffs do not now allege that they were eligible for HAMP, or that Defendant violated any HAMP provisions with respect to them. FAC at ¶ 65-69. Significantly, Plaintiffs concede that the original claims, which "were HAMP-based and, consequently, applied to a significantly broader class," are no longer present in this matter. Pl. Opp., 9 n.1. Thus, without passing on the merits of Plaintiffs' claims, it is clear that Plaintiffs' proffered class in the FAC is much smaller than the CAFA class alleged in the first complaint.

14

result of multiple modifications as a consequence of this misrepresentation.[11]  Without reaching the merits of these claims, see Samuel-Basset, 357 F.3d at 398 n.3, I nevertheless note that Plaintiffs have failed to provide the Court with any evidence supporting these jurisdictional facts.  See McNutt, 298 U.S. at 189 (jurisdiction, when challenged, must be supported by competent evidence).  Accordingly, I am left only with Plaintiffs' bare allegation that they satisfy CAFA's numerosity requirement, which I consider questionable in light of the more limited nature of Plaintiffs' claims in the FAC as compared to those in their first complaint.  Thus, while I base my decision to dismiss Plaintiffs' FAC on their failure to meet CAFA's amount in controversy requirement, I nevertheless note my additional concerns regarding whether the FAC also could satisfy CAFA's numerosity requirement.  See Boyer v. Snap–On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990) (uncertainty over federal jurisdiction must be resolved in favor of dismissal without prejudice); cf. Miedema v. Maytag Corp., 450 F.3d 1322, 1332 (11th Cir. 2006) (holding that "the district court did not err when it found that 'great uncertainty' remained about the amount in controversy, resolved that uncertainty in favor of remand, and concluded that Maytag had not established, by a preponderance of the evidence, that the amount in controversy exceeded $5,000,000" under CAFA).

Plaintiffs have failed to carry their burden, in light of Defendant's challenge, of demonstrating that their claims in the FAC satisfy CAFA's amount in controversy requirement.  The Court therefore grants Defendant's motion to dismiss for lack of subject matter jurisdiction without prejudice, so that Plaintiffs may re-file this matter in state court.  See Onyiuke v. New Jersey, 242 F. App'x 794, 797-98 (3d Cir. 2007).  I

---

[11]  Additionally, based on Plaintiffs allegations, these proposed class members would also have to have been in default on their loans with Saxon.

15

reiterate that my analysis in this Opinion is strictly limited to whether Plaintiffs have met their burden of establishing jurisdictional facts; I make no determination regarding the merits of Plaintiffs' claims, including their claims for damages.  See Samuel-Basset, 357 F.3d at 398 n.3; see also Bender v. Williamsport, 475 U.S. 534, 541 (1986) (noting that when a Court dismisses for lack of subject matter jurisdiction, it may not reach the merits of the case).

### IV. CONCLUSION.

For the aforementioned reasons, the Court **GRANTS** Defendant's motion to dismiss for lack of subject matter jurisdiction, and dismisses Plaintiffs' FAC without prejudice.


April 2, 2013                                                              /s/ Freda L. Wolfson
                                                                           Hon. Freda L. Wolfson, U.S.D.J.